IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARJORIE HYPPOLITE, | ) | CASE NO. 1:05-CV-11011-MLW |
| | ) | |
| Plaintiff, | ) | |
| | ) | JUDGE MARK L. WOLF |
| v. | ) | |
| | ) | |
| ELECTRONIC DATA SYSTEMS | ) | ANSWER TO COMPLAINT |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

NOW COMES Defendant Electronic Data Systems Corporation ("EDS"), by and through its attorneys, and for its answer to Plaintiff Marjorie Hyppolite's Complaint, states as follows:

**A.   Parties**

1.   Upon information and belief, EDS admits the allegations contained in Paragraph 1 of the Complaint.

2.   EDS admits that it is a Delaware corporation with its principal place of business in Texas. EDS also admits that it does business in Massachusetts and has a facility located in Natick, Massachusetts. EDS denies the remaining allegations contained in Paragraph 2 of the Complaint.

**B.   Facts**

3.   EDS denies the allegations contained in Paragraph 3 of the Complaint.

4.   EDS admits that Plaintiff worked at EDS' facility in Natick, Massachusetts, but denies the remaining allegations contained in Paragraph 4 of the Complaint.

5.  EDS denies the allegations contained in Paragraph 5 of the Complaint. Answering further, Plaintiff began her employment with EDS on January 19, 1998.

6.  EDS admits that Plaintiff transferred to a different account in May of 1999. EDS denies the remaining allegations contained in Paragraph 6 of the Complaint.

7.  EDS denies the allegations contained in Paragraph 7 of the Complaint.

8.  EDS denies the allegations contained in Paragraph 8 of the Complaint.

9.  To the extent that Paragraph 9 of the Complaint refers to Plaintiff's performance review that she signed on October 20, 2000, EDS admits that Plaintiff was placed in a low performance grouping. EDS also admits that management occasionally praised Plaintiff for her performance. EDS also admits that management discussed changing Plaintiff's job title contingent upon her performance improvement. EDS denies the remaining allegations contained in Paragraph 9 of the Complaint.

10. EDS denies the allegations contained in Paragraph 10 of the Complaint.

11. EDS admits that sometime in 2002, management informed Plaintiff that she was not performing well and that she had not completed required training. EDS also admits that management discussed Plaintiff's tendency to ask co-workers and management questions, rather than utilize research tools at her disposal to resolve client's questions. EDS is without sufficient information to admit or deny whether these discussions occurred on August 16, 2002. EDS denies the remaining allegations contained in Paragraph 11 of the Complaint.

12. EDS notes that Plaintiff omitted Paragraph 12 from her Complaint.

13. EDS denies the allegations contained in Paragraph 13.

14. EDS admits that it hired employees at a higher job code and pay scale than Plaintiff. EDS also admits that most employees who were hired after January 19, 1998 had less EDS seniority than Plaintiff. EDS denies the remaining allegations contained in Paragraph 14.

15. EDS admits that Plaintiff filed a complaint with the Massachusetts Commission against discrimination on August 19, 2002. EDS denies the remaining allegations contained in Paragraph 15 of the Complaint.

16. EDS denies that complaints about Plaintiff's performance "started" after she filed a complaint with the Massachusetts Commission Against Discrimination.

17. EDS is without sufficient knowledge or information to admit or deny Plaintiff's allegation that she received "numerous" e-mails from clients thanking her for assisting them.

18. EDS denies the allegations contained in Paragraph 18 of the Complaint.

19. EDS admits that on or about April 18, 2003, Mike Caropi asked Plaintiff questions regarding her work on a specific customer call because Plaintiff had approached Corapi to seek assistance with resolving the customer's issue. EDS denies the remaining allegations in Paragraph 19 of the Complaint.

20. EDS denies the allegations contained in Paragraph 20 of the Complaint.

21. EDS admits that Corapi and Curran approached Plaintiff at her work space and inquired about her handling of a specific customer call. EDS denies the remaining allegations contained in Paragraph 21 of the Complaint.

22. EDS admits that Plaintiff approached Curran after Plaintiff's shift had ended and that Curran informed Plaintiff that her conduct earlier that day constituted insubordination. EDS denies the remaining allegations contained in Paragraph 22 of the Complaint.

23. EDS admits the allegations contained in Paragraph 23 of the Complaint.

24. EDS admits that Plaintiff was asked to leave the building following her termination. EDS denies the remaining allegations contained in Paragraph 24 of the Complaint.

25. EDS denies the allegations contained in Paragraph 25 of the Complaint.

## COUNT I

26. EDS denies the allegations contained in Paragraph 26 of the Complaint.

27. EDS denies the allegations contained in Paragraph 27 of the Complaint.

## COUNT II

28. EDS denies the allegations contained in Paragraph 28 of the Complaint.

29. EDS denies the allegations contained in Paragraph 29 of the Complaint.

## COUNT III

30. EDS denies the allegations contained in Paragraph 30 of the Complaint.

31. EDS denies the allegations contained in Paragraph 31 of the Complaint.

32. EDS denies the allegations contained in Paragraph 32 of the Complaint.

33. EDS denies that Plaintiff is entitled to any of the relief requested in her prayer for relief.

34. EDS denies each and every allegation of the Complaint not heretofore specifically admitted.

## AFFIRMATIVE DEFENSES

1. Plaintiff has failed to state claims upon which relief can be granted against EDS.

2. Plaintiff's claims are barred by the equitable doctrines of waiver, estoppel, and unclean hands.

3. Some or all of Plaintiff's claims are barred by applicable statutes of limitations.

4. Plaintiff's damages may be limited and/or foreclosed under the after-acquired evidence doctrine.

5. Upon information and belief, Plaintiff's damages are limited and/or foreclosed by her failure to make reasonable efforts to mitigate her damages, if any.

6. Some or all of Plaintiff's claims or attempted claims are barred due to her failure to satisfy administrative prerequisites and/or exhaust administrative remedies.

7. At all times relevant to this lawsuit, EDS acted in good faith and in accordance with applicable laws.

8. Any and all actions taken with respect to Plaintiff's employment were for legitimate and non-discriminatory reasons, and not because of Plaintiff's race, color, or in retaliation for her filing of a complaint with the Massachusetts Commission Against Discrimination.

9. Any attempt by Plaintiff to claim punitive damages is barred by the constitution of the United States and/or equivalent provisions of the Massachusetts Constitution.

10. Punitive damages are inappropriate under the facts of this action.

11. Because any actions by EDS regarding Plaintiff were taken in good faith, in accordance with EDS' internal policies, and not taken wantonly or with malice or bad faith and/or reckless indifference to Plaintiff's protected rights, EDS did not willfully violate any law with respect to its treatment of Plaintiff, thereby negating Plaintiff's entitlement to punitive damages.

12. Count III of the Complaint is barred under the doctrine of *Fortune v. National Cash Register Co.* and its progeny.

13.     Plaintiff was an employee at will and could be discharged at any time, with or without just cause. *See* Plaintiff's Employment Agreement, attached hereto as Exhibit A.

14.     Some of Plaintiff's claims are barred by the election of remedies doctrine.

15.     EDS reserves the right to add additional affirmative defenses that become known during the course of this case.

WHEREFORE, Defendant EDS respectfully requests that Plaintiff's Complaint be dismissed in its entirety and that it be awarded all of its costs incurred in defending this action, including its attorneys' fees, and such other relief as this Honorable Court deems just and proper.

Respectfully submitted,

/s/ Joseph P. McConnell
Joseph P. McConnell (BBO #566412)
jmcconnell@morganbrown.com
Leah M. Moore (BBO # 658217)
lmoore@morganbrown.com
Morgan, Brown & Joy LLP
200 State Street
Boston, Massachusetts 02109
617-523-6666 (Telephone)
617-367-3125 (Facsimile)


Martin T. Wymer (P43279)
mwymer@bakerlaw.com
Kelly M. King (OH0076613)
kking@bakerlaw.com
**BAKER & HOSTETLER LLP**
3200 National City Center
1900 East Ninth Street
Cleveland, OH  44114-3485
(216) 621-0200 (telephone)
(216) 696-0740 (facsimile)

*Pro Hac Vice* to be Submitted

*Attorneys for Defendant EDS*

**PROOF OF SERVICE**

A true copy of the foregoing *Answer to Complaint* was served upon Plaintiff's counsel David Green, Alford & Bertrand, LLC, via regular U.S. mail on the 24th day of May, 2005.

                __/s/ Joseph P. McConnell_____
                *Attorney for Defendant EDS*

500829324.1, Answer to Complaint--Hyppolite

# EMPLOYMENT AGREEMENT

1. My full name is _MARJORIE HYPPOLITE_. In consideration of my employment by EDS, I hereby promise to honor and to be bound by this agreement, which imposes restrictions on me, as specifically set forth below. I further understand that this agreement is a condition of my being employed by EDS, my having access to EDS' confidential business and technological information, my advancement at EDS and my being eligible to receive benefits at EDS; and further that this agreement is entered into, and is reasonably necessary, to protect EDS' investment in my training and development and to protect the good will and other business interests of EDS.

2. I agree that my initial compensation with EDS shall be $ _2209_ per ~~hour~~/month.

3. I understand that the following terms and names shall apply to this agreement:

   a. "EDS" shall mean Electronic Data Systems Corporation and all of its direct and indirect subsidiaries and affiliated entities, except its parent corporation and the other subsidiaries of its parent corporation;

   b. "Confidential Information" shall mean all business information, technological information, intellectual property, trade secrets and other information belonging to EDS or relating to EDS business, technology or customers, which is not available to the general public;

   c. The term "participate" shall mean lending one's name to, acting as a consultant or adviser to being employed by, or acquiring any direct or indirect interest in any business or enterprise, whether as a stockholder, partner, officer, director, employee or otherwise (other than by ownership of less than 5 percent of the stock of a publicly held corporation).

4. I understand and agree that my employment at EDS is not for any specified term and that either EDS or I may terminate the employment relationship with or without notice or cause at any time. In the event my employment relationship with EDS is terminated, my obligations herein under paragraphs 5, 6, 7, 8, 9 and 12 nevertheless shall survive such termination.

5. I promise that in the event my employment at EDS is terminated for any reason, for one year thereafter I will not, within 50 miles of any city where I provided or marketed services to or on behalf of EDS or any customer of EDS, engage directly or indirectly in any of the following conduct:

   a. Participate in any activity as or for a competitor of EDS, which is the same as or similar to those activities in which I was involved at the time of my termination from EDS and during the prior 12-month period;

   b. Hire, attempt to hire or assist any other person or entity in hiring or attempting to hire any employee of EDS, or any person who was an EDS employee within the prior six-month period;

   c. Solicit, in competition with EDS, the business of any EDS customer or any person or entity whose business EDS solicited during the six-month period prior to my termination; or

   d. Participate in any activity for any customer of EDS or any person or entity that EDS solicited to become a customer during the six-month period prior to my termination, which is the same as or similar to those activities in which I was involved at the time of my termination from EDS.

6. I agree that if I act in violation of paragraph 5 of this agreement, the number of days I am in such violation will be added to the one-year period specified in paragraph 5.

7. During and following my employment at EDS, I will never disclose or use any Confidential Information of EDS, other than in connection with authorized activities conducted in the course of my employment at EDS or with the written approval of EDS.

8. During the course of my employment, I may work on and be a part of the development of technical or other systems for EDS. I understand and agree that systems developed by employees of EDS (including systems developed by me) and the systems and business information of EDS shall be, and remain, the sole and absolute property of EDS, and that I shall acquire no rights to any of this information.

9. In further consideration of my employment with EDS, I agree that any and all inventions, improvements, discoveries, processes, programs or systems developed or discovered by me as a result of my employment at EDS shall be fully disclosed to the officer in charge of my division, and the same shall be the sole and absolute property of EDS; and upon the request of EDS, I shall execute, acknowledge and deliver such assignments and other documents as EDS may consider necessary or appropriate to vest all rights, titles and interests therein to EDS.

10. I further understand and agree that I shall not, while employed by EDS, engage in any other employment or business venture without the prior consent of EDS.

11. I understand and agree that, from time to time, I may be tested to detect the presence or absence of any illegal drugs or controlled substances, and that the results of any such tests shall be released to EDS.

12. Upon my separation from employment, EDS is authorized to deduct from final wages or other monies due me any debts or financial obligations owed to EDS by me.

13. If the scope of any provision contained in this agreement is too broad to permit enforcement of such provision to its full extent, then such provision shall be enforced to the maximum extent permitted by law, and I hereby consent that such provision may be reformed or modified accordingly, and enforced as reformed or modified, in any proceeding brought to enforce such provision.

14. I understand and agree that EDS would be irreparably damaged in the event that the provisions of paragraphs 5, 6, 7, 8 or 9 of this agreement are violated, and I agree that EDS shall be entitled (in addition to any other remedy to which it may be entitled, at law or in equity) to an injunction or injunctions to redress breaches of this agreement and to specifically enforce the terms and provisions hereof.

15. Subject to the provisions of paragraph 13, whenever possible, each provision of this agreement will be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this agreement is held to be prohibited by or invalid under applicable law, such provision, to the extent of such prohibition or invalidity, shall be deemed not to be a part of this agreement, and shall not invalidate the remainder of such provision or the remaining provisions of this agreement.

16. Any action or proceeding arising out of or relating to this agreement may be commenced in any state or federal court of competent jurisdiction located in Collin County, Texas.

17. I agree that this agreement may not be modified or amended except by a written instrument executed by me and an authorized officer of EDS.

18. I acknowledge receipt of the information necessary to determine my eligibility to participate in the EDS Deferred Compensation Plan, the Electronic Data Systems Corporation Retirement Plan, the EDS Stock Purchase Plan, and the EDS Flexible Benefits Plan.

19. This agreement constitutes our entire agreement, and supersedes and prevails over all other prior agreements, understandings and representations by or between the parties, whether oral or written, with respect to the subject matters herein.

DATE: 01/07/98

EMPLOYEE: [signature]

EDS BY: LESTER M. ALBERTHAL, JR. [signature]

EDS AUTHORIZED SIGNATURE: [signature]

PRINTED AUTHORIZED NAME: KATHLEEN GLYNN

5CY026631-05   Rev. 11/1/95